James P. **KULKAY**, Respondent,

v.

**ALLIED CENTRAL STORES, INC.,**
**d.b.a. Donaldson's, Appellant.**

No. CX–86–1220.

Court of Appeals of Minnesota.

Dec. 16, 1986.

Review Denied Feb. 13, 1987.

Mark J. Johnson, Lang, Pauly and Gregorson, Ltd., Minneapolis, for respondent.

Mark T. Solstad, Eastlund, Peterson & Solstad, Ltd., Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

HUSPENI, Judge.

Appellant Allied Central Stores, Inc., doing business as Donaldson's, appeals from an order denying a motion for a new trial. Appellant had terminated the employment of respondent James P. Kulkay, who appellant alleged was an at-will employee. The trial court concluded that appellant's personnel policy on termination constituted a unilateral employment contract, altering the status of respondent as an at-will employee, and allowed the matter to go to the jury on a breach of contract theory. The jury found that appellant had breached the contract.

Appellant argues that the court erred in concluding that the policy constituted a contract and in awarding and calculating prejudgment interest. Respondent has filed a notice of review and argues that the court abused its discretion in allowing appellant to amend its answer to assert a privilege defense to a defamation cause of action. Respondent also contends that the court erred in directing verdicts in favor of appellant on defamation and violation of the Minnesota Human Rights Act[1] causes of action. We affirm.

## FACTS

Appellant employed respondent as a personnel/operations manager, a supervisory position, beginning on September 8, 1981. Respondent's employment was terminated on January 24, 1983, for working employees under his supervision "off the clock." Under this practice, employees work overtime without recording the hours on their time cards. The employees are later given time off with pay at a straight time rate, but do not receive compensation at a time-and-a-half rate as would be required for working overtime. Following the termination, respondent commenced this action, alleging breach of contract, defamation, violation of the Minnesota Human Rights Act, estoppel and intentional infliction of emotional distress. Respondent offered to settle for $73,000.00 in early 1984, but appellant did not accept the offer or make a counter-offer.

On the first day of the trial, the court allowed appellant to amend its answer to assert a defense of privilege to the defamation cause of action. After respondent presented his case, the trial court directed verdicts in favor of appellant on all causes of action except breach of contract.

The trial court determined, as a matter of law, that appellant's written personnel policy on termination constituted a contract, which in this instance would allow termination only if respondent's action in working employees "off the clock" was a major breach of company policy. The jury was allowed to consider the breach of contract action and answered a special interrogatory that respondent had not breached a major company policy. Consequently, his

---

1. Respondent has waived presenting an argument on the alleged Human Rights Act violation on the basis that the issue is controlled by this court's decision in *Gruening v. Pinotti,* 392 N.W.2d 670 (Minn.Ct.App.), *pet. for rev. denied,* (Minn. Oct. 29, 1986).

termination was a breach of the contract resulting from the written personnel policy. The jury calculated respondent's damages at $86,816.00, and the court allowed prejudgment interest on that amount commencing June 1, 1984, the date the prejudgment interest statute became effective.

### ISSUES

1. Did the trial court err in determining that the written personnel policy on termination constitutes a unilateral contract?

2. Did the trial court err in awarding or calculating prejudgment interest?

3. Did the trial court abuse its discretion in allowing appellant to amend its answer to include the defense of privilege to the defamation cause of action?

4. Did the trial court err in directing a verdict against respondent on the defamation charge?

### ANALYSIS

### I.

■ A personnel policy handbook may become enforceable as an employment contract if it meets the requirements for formation of a unilateral contract. *Pine River State Bank v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983). An employee hired for an indefinite term may maintain an action for breach of contract if the personnel policy provisions are not followed. *Id.* The offer must be sufficiently definite in form and must be more than an employer's general statement of policy in order to constitute a contract. *Id.* at 626. The policy must provide reasonably definite terms for a factfinder to interpret and apply in determining whether there has been a breach of the contract arising from the policy. *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 857 (Minn. 1986). The policy need not address every possible question regarding dismissals, but must permit a conclusion that respondent received certain contractual rights. *Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876, 883 (Minn.1986). Where the precise nature of those rights is unclear, it

is for the jury to determine the intent of the parties. *Id.*

Appellant argues that the provision on termination in its personnel policy handbook is not sufficiently definite to constitute an offer for a unilateral contract. Appellant views the provision as nearly identical to the one at issue in *Hunt,* which was found to be too indefinite to be considered a contract. Respondent argues that the policy is sufficiently definite and is more definite than the policy determined to constitute a contract in *Lewis.*

■ Appellant's personnel policy provides:

III. *Reasons for termination*

A. *Poor performance*

Before any Regular or part-time Regular Employee can be terminated for inferior or unsatisfactory performance, the following steps must be taken:

1. Counselling by the Department Manager and/or the Personnel Office regarding errors or deficiencies. A record of this counselling is to be written by the counselling party and signed if possible by the employee before being filed in the employee's personnel folder.

2. If after a reasonable interval, improvement does not follow the warning, termination may be recommended.

B. *Cause*

In terminating an employee for cause, the following violations can result in immediate dismissal:

1. Chronic tardiness or absenteeism

2. Dishonesty

3. Insobriety or immorality

4. Willful destruction or defacing of Company property

5. Failure to carry out reasonable request from a duly authorized superior

6. Any other major breach of policy.

Dismissal for cause automatically cancels all separation allowances which might have accrued to an individual.

In *Hunt,* the policy provided:

DISCIPLINARY ACTION

If an employee * * * is reprimanded or asked to make certain corrections in theif [sic] job performance they will be placed on probation and it will be documented and placed in their personnel file. Improvement must be shown or the employee may be terminated.

\*    \*    \*    \*    \*    \*

DISCHARGE

In the event of a serious offense, an employee will be terminated immediately. 384 N.W.2d at 855. The employee in *Hunt* was given an immediate termination. The *Hunt* court noted that the policy does not define or give specific examples of a "serious offense" prompting immediate termination. The court concluded "Significantly, the manual neither defines nor gives examples of what is a 'serious offense.' This vagueness falls far short of the specificity necessary for a contractual offer under principles enunciated in *Pine River.*" *Id.* at 857.

Appellant's personnel policy indicates that immediate dismissal is appropriate when employment is being terminated for cause. In contrast, counseling and an opportunity for improvement are to be provided when termination is based on poor performance. The policy delineates distinct procedures to be followed when either basis for termination is asserted. The policy further lists six items that constitute cause for immediate dismissal. The sixth item, "any other major breach of policy," indicates that the five items listed are examples of major breaches of policy. This furnishes a context for defining a major breach of policy and provides a degree of detail lacking in the policy at issue in *Hunt.*

While we must conclude that the appellant's personnel policy is more definite than the one considered in *Hunt,* it is further necessary to determine whether the policy is sufficiently definite to constitute a contract. In *Lewis,* the court found that the following employee handbook language gave rise to a unilateral contract:

Dismissals usually come about because of an individual's indifference to work quality or attendance standards. Except for misconduct serious enough to warrant immediate dismissal, no employee will be discharged without previous warning and a period in which to bring performance up to a satisfactory level. 389 N.W.2d at 880 n. 1. Employees in *Lewis* were given immediate terminations for gross insubordination. The court contrasted two provisions in the handbook:

The employee handbook sets forth the company's human resources policies. Among its provisions are sections on 'Job Security' and 'Dismissals.' The section on job security appears to be no more than a general statement of policy: 'Equitable seeks to ensure the job security of all salaried employees.' General statements of policy do not meet the contractual requirements for an offer. *Pine River,* 333 N.W.2d at 626. The language on dismissals, however, is definite: 'Except for misconduct serious enough to warrant immediate dismissal, no employee will be discharged without previous warning and a period in which to bring performance up to a satisfactory level.'

*Id.* at 883.

*Lewis* supports the trial court's conclusion in this case that appellant's written personnel policy gave rise to a contract.[2] The *Lewis* court found that "misconduct serious enough to warrant immediate dismissal" provided appropriate guidance for a fact-finder considering whether there had been a breach of contract. Appellant's personnel policy allows immediate termination for any of five listed reasons or for any other major breach of company policy.

We must agree with respondent that, when contrasted with the language of the policy at issue in *Lewis,* appellant's personnel policy does meet the criteria for formation of a unilateral contract. Although it does not identify every action that may be considered a major breach of policy, it does

**2.** *Lewis* was published after the trial court's de-   termination of the issues presented here.

provide an adequate basis for a jury to determine whether the resulting contract has been breached.

In addition to finding the policy language here sufficiently definite to form a contract, we also note the absence of limiting language which could have been used by appellant to avoid this result. For example, appellant could have indicated in the written personnel policy that its provisions did not constitute an offer of an employment contract or otherwise stated that the policy did not alter the status of at-will employees. The employer may include language in the handbook to reserve discretion in certain matters or reserve a right to modify handbook provisions. *Pine River*, 333 N.W.2d at 627. Because such provisions are not present here, we must conclude that the trial court did not err in determining that the written personnel policy gave rise to a unilateral employment contract.

## II.

■ The trial court awarded prejudgment interest under the provisions of Minn. Stat. § 549.09, subd. 1(b) (1984), which provides in pertinent part:

[P]re-verdict * * * interest on pecuniary damages shall be computed * * * from the time of the commencement of the action, except as provided herein. If either party serves a written offer of settlement, the other party may serve a written acceptance or a written counter-offer within 60 days. After that time interest on the judgment shall be calculated by the judge in the following manner. The prevailing party shall receive interest on any judgment from the time the action was commenced * * * until the time of verdict or report only if the amount of its offer is closer to the judgment than the amount of the opposing party's offer.

Respondent, on January 9, 1984, presented a written offer to appellant to settle for $73,000.00. Appellant did not accept the offer or submit a written counter-offer. The jury awarded damages of $86,816.00, and the court awarded interest commencing on July 1, 1984, the date the statute became effective. Appellant contends that the court erred in awarding and calculating prejudgment interest.

The statute provides that, when both parties offer to settle, the prevailing party may receive prejudgment interest only if its offer was closer to the judgment than the offer of the opposing party. That is not the situation here. Only respondent offered to settle, and as a result, the portion of the statute relating to situations where both parties make such offers does not apply. Consequently, the statute provides that prejudgment interest shall be computed from the time of the commencement of the action. The trial court did not err in awarding such interest to respondent.

■ The trial court also properly calculated interest based upon the total amount of damages found by the jury. Appellant argues that interest should be calculated as if the amount of damages had been earned over a year-long period of time as a salary rather than as a single sum of money available to respondent when the judgment was entered. We can discern no support for appellant's argument. The statute provides for prejudgment interest on pecuniary damages. It makes no provision for such a "phasing-in" of the damage award as appellant requests when the jury found a single sum of damages. We cannot interpret the statute to award interest on increasing portions of the damage award until the total amount would have been earned had it been respondent's salary.

## III.

■ Respondent, through a notice of review, argues that he was prejudiced by the trial court's decision on the first day of the trial to allow appellant to amend its answer to assert a defense of privilege to the defamation cause of action. Respondent did not raise this matter before the trial court through a motion for judgment notwithstanding the verdict or a new trial.

Where there has been no motion for a new trial, review is limited to whether the evidence supports the findings of fact and whether the findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). Rulings on procedural matters such as amendment of pleadings cannot be considered on appeal when such a motion has not been made. *Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn. 1986). Therefore, we are precluded from reviewing this matter.

## IV.

■ Respondent also asserts that the trial court erred in directing a verdict on the defamation cause of action. We recognize that a directed verdict is appropriate only in exceptional cases. *Garner v. Todd*, 361 N.W.2d 459, 460 (Minn.Ct.App.1985). The motion for a directed verdict presents a question of law on the sufficiency of the evidence to raise a fact question for the jury's decision. *Midland National Bank v. Perranoski*, 299 N.W.2d 404, 409 (Minn. 1980). A directed verdict is sustainable only if it clearly would be the duty of the trial court to set aside a contrary verdict, as against the evidence or contrary to the law of the case. *State Bank of Cologne v. Schrupp*, 375 N.W.2d 48, 51 (Minn.Ct. App.), *pet. for rev. denied*, (Minn. Dec. 13, 1985). In reviewing the directed verdict, the appellate court must make an independent determination of the sufficiency of the evidence to present a fact question for the jury. *Id.*

The parties have not made a transcript available. Instead, respondent has indicated an intent to proceed on the basis of an agreed statement, pursuant to Minn.R. Civ.App.P. 110.04. The statement indicates only:

> Respondent claimed in his Complaint that Appellant had falsely communicated to third parties that Respondent had been terminated from employment at Donaldsons for a 'major breach of policy.' * * * The case proceeded to trial the same day [that the answer was amended to assert

the affirmative defense of privilege] and Respondent was foreclosed from proceeding with his defamation claim because of lack of evidence of any malice by Appellant. The defamation claim was formally dismissed at the close of Respondent's case.

This is the only evidence available for review in this proceeding, and it provides little assistance in making an independent determination of the sufficiency of the evidence. Based upon the information contained in the agreed statement, we must conclude that the trial court properly determined that the jury could not return a verdict in respondent's favor. Evidence of malice would be necessary to defeat the affirmative defense of privilege, and apparently no such evidence was presented.

## DECISION

The trial court did not err in determining that the personnel policy constituted a unilateral contract or in awarding and calculating prejudgment interest. Because respondent did not make a post-trial motion regarding amendment of appellant's pleading to assert a defense of privilege to the defamation claim, review is precluded. The record indicates that the court did not err in directing a verdict on the defamation cause of action.

Affirmed.