Phillip Henry LEE, Plaintiff,

v.

SPERRY CORPORATION, Defendant.

Civ. No. 4–86–551.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 16, 1987.

David R. Forro, Caldecott, Greer, Forro & Taber, Minneapolis, Minn., for plaintiff.

Thomas M. Sipkins, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff Phillip Henry Lee, a Minnesota resident, brought this action in Minnesota state court against defendant Sperry Corporation asserting claims related to his employment termination and seeking damages in excess of $50,000. He asserts five causes of action: race discrimination under the Minnesota Human Rights Act, Minn. Stat. § 363.03; breach of employment contract; wrongful termination; replevin; and failure to pay wages after demand in violation of Minn.Stat. § 181.13.[1] On July 9, 1986, defendant, a Delaware corporation, removed the action, alleging diversity jurisdiction. Now before the court are defendant's motion for summary judgment on plaintiff's first three causes of action, and plaintiff's motion for summary judgment on his claim under Minn.Stat. § 181.13.

In considering defendant's motion for summary judgment, the court views the facts in the light most favorable to plain-

---

1. The first four causes of action were asserted in the complaint filed in state court. Count 5 was added in an amended complaint after the action was removed.

tiff. Plaintiff, a person of Asian descent, began work as a Process Engineer Manager at defendant's semiconductor facility in Eagan, Minnesota on June 1, 1982. In June 1985, plaintiff was proposed for layoff for alleged performance-related reasons, but defendant's Department of Human Resources vetoed the proposal on the ground that insufficient documentation existed. In September 1985, a performance review of plaintiff noted deficiencies. In November 1985, defendant prepared for a reduction-in-force at the semiconductor facility and began to review employees who had been proposed for layoff. Defendant's Human Resources representative and labor counsel approved plaintiff's layoff based on his performance review. On December 9, 1985, plaintiff and 134 other employees were laid off through a reduction-in-force.

### Count 1: Minnesota Human Rights Act

Count 1 of plaintiff's complaint asserts that he was laid off on the basis of his race in violation of the Minnesota Human Rights Act (MHRA). Plaintiff also alleges that he received differential treatment in a number of other ways, including exclusion from meetings, the relocation of his desk while he was on vacation, failure to conduct his performance reviews in accordance with company policy, a nonperiodic review, the payment of less severance pay, and his proposed layoff in June 1985. The MHRA makes it an "unfair employment practice" for an employer, on the basis of race, to discharge an employee or "to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363.03 subd. 1(2)(b) and (c).

In considering claims of discrimination under the MHRA, Minnesota courts have adopted the analysis developed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. See Sigurdson v. Isanti County, 386 N.W.2d 715, 719–20 (Minn.1986); Danz v. Jones, 263 N.W.2d 395, 398–99 (Minn.1978). The Supreme Court has established a three-stage allocation of burdens for a claim of discriminatory treatment under Title VII:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted) (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668 (1973)).

To establish a prima facie case in a discharge case, plaintiff must prove by a preponderance of the evidence that he was terminated "under circumstances which give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093 (footnote omitted). The Supreme Court described a prima facie case of race discrimination in the job application context in *McDonnell Douglas.* 411 U.S. at 802, 93 S.Ct. at 1824. Several courts have adopted that standard to apply to the discriminatory discharge context:

[T]he plaintiff must show (i) that he was within the protected class; (ii) "that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance"; and (iii) "that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills."

*Sengupta v. Morrison–Knudsen Co.,* 804 F.2d 1072, 1075 (9th Cir.1986) (quoting *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 (1st Cir.1979) (footnote omitted)). The Court of Appeals recently applied the third portion of the test to the reduction-in-force context:

In a reduction-in-force case, there is no adverse inference to be drawn from an employee's discharge if his position and duties are completely eliminated; it is readily explained by the employer's economic hardship and the decrease in business. If [plaintiff] cannot show that [defendant] had some continuing need for his skills and services in that his various duties were still being performed, then the basis of his claim collapses.

*Leichihman v. Pickwick International,* 814 F.2d 1263, 1270 (8th Cir.1987).

■ Defendant argues that plaintiff cannot make a prima facie case because defendant did not seek a replacement with similar qualifications, thus demonstrating no continuing need for the services and skills that plaintiff had provided. In defendant's view, the economic downturn in the semiconductor industry constitutes a legitimate, nondiscriminatory reason for the discharge and plaintiff has failed to show that this reason is a pretext for discriminatory intent. Plaintiff argues that a disputed fact exists concerning whether he was "replaced" given that his duties were redistributed.

Although defendant did not seek a replacement for plaintiff, defendant admits that plaintiff's "job duties were simply distributed amongst various persons remaining in the group after his layoff." Defendant's Brief at 23 (citing deposition of George Iwaszek). Kevin Stoltenberg, another of defendant's employees, also testified that George Iwaszek and a technician named Tom Woods were largely to assume plaintiff's duties after he was laid off. Deposition of Kevin Stoltenberg at 34. In *Leichihman,* the Court of Appeals explained that a prima facie case in the reduction-in-force context requires the plaintiff to show that "his various duties were still being performed." 814 F.2d at 1270. Viewed in the light most favorable to plaintiff, the facts here indicate that plaintiff has made a prima facie showing of racial discrimination and that an issue of fact

exists as to whether the reduction-in-force was a pretext for his termination.[2] In view of this record and disputed issues of fact concerning alleged differential treatment, summary judgment would be inappropriate. Defendant's motion for summary judgment on count 1 should therefore be denied.

*Count 2: Breach of Employment Contract*

In count 2, plaintiff alleges that defendant's employee handbook and personnel procedures provided to plaintiff at the commencement of his employment constitute an employment contract that defendant has breached. No explicit written employment contract existed between the parties. It is undisputed that when plaintiff began work at Sperry, the employee handbook and the personnel procedures did not include an employment contract disclaimer or a statement of employment-at-will. After he had worked there several months, plaintiff was provided with, and admits receiving, an employee handbook which includes the following language:

> Neither the offer and acceptance of employment or the establishment and maintenance of operating policies and procedures by the Company create a contract of employment except as might be approved in writing by the Sperry Univac Vice President, Human Resources. Although it is intended that the relationship between Sperry Univac and its employees will grow and be in the best interests of both the employee and the company, the relationship is terminable at any time at the will of either the employee or the company, and without the need to indicate a specific reason or cause.

"Your Company and You" at J–4. In addition, the personnel procedures were subsequently amended to provide that:

> This procedure is intended to be a guideline for management in addressing voluntary and involuntary termination of employment for all Information Systems

**2.** The issue in this case is whether plaintiff's inclusion in the reduction-in-force was because of disparate treatment. Even though a reduction-in-force may, as a general matter, constitute a legitimate, nondiscriminatory reason for a layoff, any discriminatory selection of employees for inclusion in the layoff would violate the Minnesota Human Rights Act.

Group Employees not covered by a collective bargaining agreement.

All employment is on an "at will" basis. Nothing contained herein shall be construed to constitute a contract of employment, either expressed or implied, nor shall anything contained herein be construed to modify the employment-at-will relationship which exists between Sperry and its employees.

Personnel Procedure 6.3.1.1(A). The parties dispute whether plaintiff ever saw the amended personnel procedures.

Defendant argues that these documents, with their disclaimers, cannot provide the basis for an employment contract and that plaintiff's employment was "at will." Plaintiff focuses on his commencement of employment and argues that the handbook and procedures as they existed at that time are sufficient to constitute an employment contract. In addition, plaintiff argues that defendant's conduct after the release of the amended documents is consistent with the existence of a contract, such as when it adhered to its termination policies in refusing to terminate him in June 1985.

In *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983), the Minnesota Supreme Court held that handbook provisions may be enforceable as part of the employment contract "if they meet the requirements for formation of a unilateral contract." The supreme court found there that the handbook's employment termination procedures constituted a contract and that the employer breached that contract by failing to follow the procedures. *Id.* at 630–31. Here, plaintiff largely relies on Personnel Procedure 6.3.1.1, which is an 11–page document setting forth procedures related to employment termination. Possibly this document established a unilateral contract at the commencement of plaintiff's employment under the *Pine River* standard. *See Lewis v. Equitable Life Assurance Society*, 389 N.W.2d 876, 883 (Minn. 1986).

An employment relationship based on a unilateral contract may be altered, however. The *Pine River* court stated:

> In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation. In this manner, an original employment contract may be modified or replaced by a subsequent unilateral contract. The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer.

333 N.W.2d at 627. Although *Pine River* dealt directly with the transformation from at-will employment to employment based on unilateral contract, the principle seems equally applicable to the opposite transformation. Here, plaintiff worked for over three years after receiving the handbook with the employment contract disclaimer. During that time, he was provided with salary increases and other improvements in employment benefits. *See* Affidavit of Barbara Tilford.

The explicit disclaimer and statement of employment-at-will here negates the existence of any contract or claim of breach thereof. *See Kulkay v. Allied Central Stores, Inc.*, 398 N.W.2d 573, 578 (Minn.Ct.App.1986) ("limiting language" can avoid formation of unilateral contract based on personnel policy). *Kulkay* also noted that an employer may "reserve a right to modify handbook provisions." *Id.* The handbook provided to plaintiff at the commencement of his employment noted that defendant's personnel policies and handbook could change. "Your Company and You" at Introduction. Those documents did change, limiting language was added, and any unilateral contract based thereon was eliminated. Defendant's motion for summary judgment on count 2 should therefore be granted.[3]

---

**3.** The parties' dispute over whether plaintiff received the amended version of 6.3.1.1 is not material. The revised handbook states that "the

establishment and maintenance of operating policies and procedures by the Company [does not] create a contract of employment." As stat-

*Count 3: Wrongful Termination*

■ Plaintiff asserts that defendant breached a covenant of good faith and fair dealing by holding an irregular performance review solely in order to justify his termination. Plaintiff initially relies on an alleged express covenant. When he began his employment, defendant's employee handbook included the following language:

Terminations of any kind are processed in a manner that treats all employees fairly, in good faith, and consistent with existing laws.

"Your Company and You" at C7. Plaintiff asserts that this clause, taken together with the personnel procedures applicable to terminations, constitutes a covenant of good faith and fair dealing. Plaintiff concedes that this language was subsequently removed from the handbook, but argues that an implied covenant was created because defendant continued to enforce the personnel procedures.

Even if the original handbook language created an express covenant, that express covenant was eliminated when the handbook was amended and the language removed. Moreover, under Minnesota law, "an implied covenant of good faith and fair dealing [is not read] into employment contracts." *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853, 858 (Minn.1986).[4] Since there is no covenant, there can be no breach of it. Defendant's motion for summary judgment on this claim should be granted.

*Count 5: Statutory Penalty for Failure to Pay Wages*

Plaintiff alleges that he discovered on May 2, 1986, that he had not been paid for the week ending May 3, 1985. He asserts that he had worked one and one-half days that week and had arranged to receive three and one-half days of "comp time" for previous weekend work. On July 9, 1986, he sent a letter demanding the wages. After several exchanges of letters, defendant sent plaintiff a check for one and one-half days wages on December 30, 1986. Plain-

tiff argues that he is entitled to a statutory penalty equal to 15 days wages as a result of defendant's failure to pay and has moved for summary judgment on this claim.

Minn.Stat. § 181.13 provides in part:

When any person, firm, company, association, or corporation employing labor within this state discharges a servant or employee, the wages or commissions actually earned and unpaid at the time of the discharge shall become immediately due and payable upon demand of the employee. If the employee's earned wages and commissions are not paid within 24 hours after such demand, ... the discharged employee may charge and collect the amount of the employee's average daily earnings at the rate agreed upon in the contract of employment, for such period, not exceeding 15 days, after the expiration of the 24 hours, as the employer is in default, until full payment or other settlement, satisfactory to the discharged employee, is made.

Defendant points out that the demand for wages was made almost six months after plaintiff's termination and almost one year after the time in question. This delay, defendant argues, makes it impossible to determine whether plaintiff actually worked one and one-half days. Defendant claims that it made the payment for one and one-half days wages only as an attempt to settle the disputed claim and not as an admission that plaintiff, in fact, worked one and one-half days. In defendant's view, a factual question remains concerning whether plaintiff actually worked for those days. Defendant also denies that there was ever any "comp time" agreement.

■ Disputed issues of material fact as to whether the wages were "actually earned" under the statute preclude disposition of this claim on a motion for summary judgment. Plaintiff correctly argues that defendant could have protected itself from

---

ed above, plaintiff admits receiving the revised handbook with this language.

**4.** Moreover, no employment contract exists here into which an implied covenant could be read, if that were permissible under Minnesota law.

the statutory penalty by making a good faith tender of wages due under Minn.Stat. § 181.14.[5] Waiver of this defense, however, does not mean that plaintiff is automatically entitled to the penalty. The penalty depends on whether any wages were actually earned; that issue remains in dispute. Plaintiff's motion for summary judgment should therefore be denied.

Accordingly, pursuant to the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment is granted with respect to counts 2 and 3, and those claims are dismissed. In all other respects, the motion is denied.

2. Plaintiff's motion for summary judgment on count 5 is denied.

---

5. Minn.Stat. § 181.14 provides in part:
   If the employer disputes the amount of wages or commissions claimed by the employee under the provisions of this section or section 181.13, and the employer makes a legal tender of the amount which the employer in good faith claims to be due, the employ-

er shall not be liable for any sum greater than the amount so tendered and interest thereon at the legal rate, unless, in an action brought in a court having jurisdiction, the employee recovers a greater sum than the amount so tendered with interest thereon....