Jo Ann AUDETTE, Appellant,

v.

NORTHEAST STATE BANK OF
MINNEAPOLIS, Respondent.

No. C3–88–1872.

Court of Appeals of Minnesota.

Feb. 28, 1989.

James H. Kaster, Bradley C. Warner, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Robert C. Hynes, Karen J. Kingsley, Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Minneapolis, for respondent.

Heard, considered, and decided by KALITOWSKI, P.J., and LANSING and FLEMING, JJ.*

## OPINION

KALITOWSKI, Judge.

Appellant commenced an action alleging breach of employment contract. The trial court granted respondent summary judgment. We affirm.

### FACTS

Appellant, Jo Ann Audette, brought a claim against respondent, Northeast State Bank of Minneapolis (Bank), for breach of contract arising from respondent's employee policy manual. Respondent moved for summary judgment against appellant on April 12, 1988. On July 1, 1988, the trial court granted respondent's motion for summary judgment.

Appellant was employed by the Bank since 1976 as a teller and, occasionally, as head teller. While performing her duties as teller, appellant issued a bank money order in excess of $20,000 to an individual requesting his account be closed. Approxi-

* Acting as judge of the Court of Appeals by ap-
pointment pursuant to Minn. Const. art. VI, § 2.

mately one month later the owners of the account reported to the Bank there had been transactions made on the account by someone other than themselves.

As a result of this incident, appellant was suspended for two weeks without pay and later told she had the option of resigning or being discharged. Appellant resigned effective July 17, 1986.

Respondent provides all its employees with a policy manual entitled Northeast State Bank of Minneapolis Personnel Manual (manual). Chapter 2 of the manual, entitled Employment Policy, contains the following language:

> The policies described here are not conditions of employment, and the language is not intended to create a contract between Northeast State Bank and its employees.

Chapter 8 of the manual sets forth procedures for separation from employment. Appellant claims respondent did not follow the disciplinary procedures required by chapter 8 of the manual and thereby breached her employment contract.

The trial court granted respondent's motion for summary judgment on the grounds that as a matter of law no employment contract exists between the parties. Appeal followed.

## ISSUE

Did the trial court err in granting respondent summary judgment based on finding no written employment contract exists by virtue of the disclaimer in respondent's employment manual?

## ANALYSIS

The standard for granting summary judgment is set forth in Minn.R.Civ.P. 56.-03, which states in part:

> Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law.

The Minnesota Supreme Court has stated:

> On appeal from summary judgment, it is the function of this court only to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328 (Minn.1979).

Appellant contends that chapter 8 of respondent's manual (Separation) constitutes a contract demanding adherence to the provisions set forth by respondent. Specifically, provisions for separation require a probationary period allowing the employee to improve performance.

■ Appellant was hired by respondent in 1976. Where hiring is for an indefinite term, employment is said to be "at-will" which means an employer can summarily dismiss an employee for any reason or no reason, and the employee is under no obligation to remain on the job. *Pine River v. Mettille,* 333 N.W.2d 622, 627 (Minn.1983) (citing *Cederstrand v. Lutheran Brotherhood,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962)).

■ It is well-settled Minnesota recognizes a possible modification of an employment-at-will relationship by a company's policy manual or handbook. *See, e.g., Pine River,* 333 N.W.2d at 626.

The *Pine River* court stated:

> Whether a handbook can become part of the employment contract raises such issues of contract formation as offer and acceptance and consideration.

*Id.* at 625.

The Minnesota Supreme Court went on to explain:

> If the handbook language constitutes an offer, and the offer has been communicated by dissemination of the handbook to the employee (footnote omitted), the next question is whether there has been an acceptance of the offer and consideration furnished for its enforceability. In the case of unilateral contracts for employment, where an at-will employee retains employment with knowledge of new or changed conditions, the new or

changed conditions may become a contractual obligation.

*Id.* at 626–27.

■ Summary judgment is appropriate where "even accepting a plaintiff's version of the facts as true, the plaintiff cannot establish a modification of the at-will employment doctrine." *Corum v. Farm Credit Services,* 628 F.Supp. 707, 715 (D.Minn.1986) (citations omitted).

Respondent cites *Hunt v. IBM Mid America Employees Federal Credit Union,* 384 N.W.2d 853 (Minn.1986), where the Minnesota Supreme Court stated:

> [T]he resolution of whether the language rises to the level of a contract is for the court. Where * * * the intent of the parties is totally ascertainable from the writing, construction is for the court.

*Id.* at 856.

In *Kulkay v. Allied Central Stores, Inc.,* 398 N.W.2d 573 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 13, 1987) this court stated:

> In addition to finding the policy language here sufficiently definite to form a contract, *we also note the absence of limiting language which could have been used by appellant to avoid this result. For example, appellant could have indicated in the written personnel policy that its provisions did not constitute an offer of an employment contract* or otherwise stated that the policy did not alter the status of at-will employees.

*Id.* at 578 (emphasis added).

Unlike the manual in *Kulkay,* here respondent's manual clearly states:

> The policies described here are not conditions of employment, and *the language is not intended to create a contract* between Northeast State Bank and its employees.

(emphasis added).

Appellant argues the trial court erred in giving effect to respondent's disclaimer because the wording and placement of the disclaimer create ambiguity as to its scope and meaning. We disagree and hold the language in question is "understandable in (its) intent and effect." *See Harvet v. Unity Medical Center, Inc.,* 428 N.W.2d 574, 577 (Minn.Ct.App.1988).

Appellant also complains that the disclaimer was on the eleventh page of the manual and "not set out in bold print or in any other way made to stand out or be conspicuous." However, appellant does not claim that because of these alleged defects she did not have notice of the disclaimer.

■ Thus, while we believe it is better practice for an employer to take steps to call attention to purported disclaimers in employment manuals by bold print or other emphasis, we find the disclaimer in this case to be adequate.

## DECISION

The trial court's grant of summary judgment in favor of respondent on the grounds that plain language in the employment manual clearly and effectively indicates respondent's intent not to create an employment contract is affirmed.

AFFIRMED.