Gary D. BROWN, et al., Respondents,

v.

TONKA CORPORATION, a wholly owned subsidiary of Hasbro, Inc., Appellant.

No. C5-94-487.

Court of Appeals of Minnesota.

July 26, 1994.

George R. Wood, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for appellant.

Todd M. Johnson, Patrick J. Neaton, Chamberlain, Neaton & Johnson, Wayzata, for respondent.

Considered and decided by RANDALL, P.J., HARTEN and SCHULTZ,* JJ.

## OPINION

HARTEN, Judge.

In challenging summary judgment, appellant employer contends that a revised company vacation policy did not entitle respondents to the vacation benefits they claim in this action. The trial court did not err in determining that respondents were entitled to their 1991 vacation benefits. We affirm.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

Respondents Gary D. Brown and Rhonda J. Brandt are former employees of appellant Tonka Corporation. In 1991, the company closed its Minnesota operations and terminated respondents' employment at the close of business on December 31, 1991. Brown had worked for Tonka since October 6, 1969; at the time of his termination, he was a manager of master planning. Brandt had worked for Tonka since June 10, 1985; at the time of her termination, she was an engineering and document administrator. When respondents sought compensation for their vacation days accrued during 1991, appellant denied entitlement and refused payment. Respondents then brought suit against appellant alleging breach of the employment contract, estoppel, and statutory penalties for nonpayment of wages under Minn.Stat. § 181.13 (1992). After cross-motions for summary judgment, the district court denied appellant's motion and awarded summary judgment for respondents on their breach of contract and statutory penalty claims.

Prior to a 1989 amendment, appellant's vacation policy, instituted January 1, 1980, had been in effect continuously and had applied to both respondents. Under this policy, the employment year for vacation purposes ran from January 1 to December 31. In the event of termination, the policy provided:

A terminating employee may receive pay in lieu of any unused vacation allowance earned in the prior year to be taken in the current year, or may take days off before the final termination date. *Additionally, a terminated employee will receive pay in lieu of vacation time accrued during the current year provided the termination was due to one of the following reasons:* 1) resignation with notice of one week for office hourly and two weeks for salaried employees; 2) voluntary and medical-related separation; 3) *involuntary separation for other than cause.*

(Emphasis added.) According to Stan Lammle, appellant's director of human ser-

pointment pursuant to Minn. Const. art. VI, § 10.

vices, "accrued vacation" meant "vacation benefits earned during the current year, to be taken during the next vacation year" and "earned vacation" meant "vacation benefits earned during the previous vacation year, to be taken during the current vacation year."

On November 8, 1989, Lammle sent an "improved vacation policy" to all employees. The portion of this memo pertinent to this appeal read:

> Also effective on January 1, 1990, Tonka will discontinue the practice of paying accrued, unearned vacation to employees leaving the company. An employee earns vacation only by working the entire previous year. Terminating employees with more than one year of service will continue to receive payment for all earned, but unused vacation days. Terminating employees with less than one year of service receive no vacation credit or payment.

Both respondents acknowledged receipt of this new policy. Lammle testified at his deposition that the 1989 memo addressed two concerns:

> Payment of accrued vacation for employees leaving the company with less than one year, and payment of accrued vacation for employees regardless of years of service leaving the employ of the company on a voluntary basis.

Lammle also prepared two affidavits in which he stated that the 1989 policy change did not apply to respondents. He clarified that the portion of the memo regarding earned and accrued vacation was directed at employees who worked less than one year before terminating their employment. In the second affidavit, he explained that Tonka had a problem under the 1980 policy with employees who collected two weeks of vacation pay even though they had worked less than one year for the company and had voluntarily terminated their employment:

> 6. Based upon this problem, I formulated a new vacation benefit rule for Tonka, which I disseminated in a memorandum to employees on November 8, 1989. * * * This new rule provided that employees *leaving* their employment with Tonka were not entitled to receive "accrued" vacation benefits. This new rule was not intended

to address, and did not address, the right of employees to receive "accrued" vacation benefits when *involuntarily terminated without cause*. The Tonka employees who were terminated effective December 31, 1991 when Hasbro, Inc. ("Hasbro") moved Tonka's operations to the east coast, including Plaintiffs, were involuntarily terminated without cause. As set forth above, the rule announced in the January 1, 1980 memorandum, * * * specifically provided that these employees were entitled to accrued vacation pay.

> 7. From November 8, 1989 until Hasbro acquired Tonka, no situations arose at Tonka in which it was necessary for me to determine if the rule announced in the November 8, 1989 memorandum—limiting accrued vacation pay for "leaving" employees—should be extended beyond voluntarily terminating or "leaving" employees to employees involuntarily terminated without cause.

(Emphasis in original.)

In May 1991, Hasbro, Inc. acquired appellant and decided to close appellant's Minnesota business and terminate the majority of appellant's employees as of the close of business on December 31, 1991. This announcement put respondents on notice that their jobs would be terminated. The senior vice president for human resources at Hasbro said in his deposition that Hasbro chose the December 31, 1991 date because it was at the end of a fiscal quarter, not because it had any significance with regard to employee benefits.

### ISSUE

Did the district court err in summarily determining that respondents are entitled to their vacation pay accrued during the 1991 work year?

### ANALYSIS

On appeal from summary judgment, this court must determine whether any issues of material fact exist and whether the district court erred as a matter of law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). For purposes of their

motions for summary judgment, the parties agreed that no material issues of fact exist. Decision of this case revolves around the provisions of respondents' employment contract. The construction and interpretation of a contract are questions of law which this court reviews de novo. *See Hunt v. IBM Mid America Employees Fed. Credit Union,* 384 N.W.2d 853, 856 (Minn.1986); *Michaelson v. Minnesota Mining & Mfg. Co.,* 474 N.W.2d 174, 179 (Minn.App.1991), *aff'd,* 479 N.W.2d 58 (Minn.1992).

 An employer's liability for employees' vacation pay is wholly contractual. *Tynan v. KSTP, Inc.,* 247 Minn. 168, 177, 77 N.W.2d 200, 206 (1956). Courts have long recognized that an employer is obligated to provide vacation pay when employees have met the vacation pay eligibility requirements. *See id.* at 184, 77 N.W.2d at 210 (where contract that contained paid vacation provision remained in effect, employee who had met work requirements was entitled to vacation time or pay in lieu thereof); *Teamsters Local Union 688 v. John J. Meier Co.,* 718 F.2d 286, 289 (8th Cir.1983) (employer obligated to pay vacation benefits even though employees did not return to work because employer and union had not reached new collective bargaining agreement); *Local Union No. 186 v. Armour & Co.,* 446 F.2d 610 (6th Cir.1971) (employer who closed plant in September was obligated to pay vacation benefits to all employees who had worked the requisite 150 days in the calendar year, despite fact that they were not working on January 1 of following year), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972); *State ex rel. Hagen v. Bismarck Tire Ctr., Inc.,* 234 N.W.2d 224, 226 (N.D.1975) (employee was entitled to accrued, unused vacation pay because he had a "vested right" in it and had not forfeited that right).

It is beyond dispute that an agreement to pay vacation pay to employees made to them before they performed their services, and based upon length of service and time worked, is not a gratuity but is a form of compensation for services, and when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation.

*Tynan,* 247 Minn. at 177, 77 N.W.2d at 206.

 Appellant contends that respondents are ineligible for their 1991 vacation benefits because they failed to work into 1992 in order to "earn" them. We disagree.

The record shows that respondents were governed by the comprehensive vacation policy instituted January 1, 1980.[1] This policy did not require employment on a specific date as a condition precedent to earning vacation time. Under the 1980 policy, upon termination, respondents were entitled to any "unused earned" vacation pay: that vacation they had "accrued" in 1990 and "earned" in 1991, but had not yet utilized. In addition, they were entitled to that "pay in lieu of vacation time accrued during the current year [1991]" because appellant terminated them involuntarily without cause. Respondents had already provided consideration for these vacation benefits by working the entire year from January 1 through December 31, 1991. · Having received the benefit of respondents' work product, appellant is obligated to pay respondents for the accrued vacation time they accumulated during that period. *See Tynan,* 247 Minn. at 177, 77 N.W.2d at 206.

 These entitlements to benefits did not change when appellant issued the 1989 memorandum.[2] Contrary to appellant's conten-

1. The district court properly determined that the 1980 vacation policy formed a unilateral contract with respondents. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 626 (Minn.1983). Appellant has not challenged this determination on appeal.

2. The district court properly determined that the 1989 memorandum modified the existing contract with regard to certain vacation policies. *See Pine River,* 333 N.W.2d at 627 (personnel handbook provisions may be enforceable as part

of original employment contract if they meet requirements for unilateral contract); *see also Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 883 (Minn.1986) (applying *Pine River* doctrine). The memorandum contained language specific enough to constitute an offer. *See Lewis,* 389 N.W.2d at 883 (specific language is necessary for an offer; "general statements of policy do not meet the contractual requirements"). Appellant communicated the offer by providing all employees with the memorandum.

tion, that memorandum did not apply to respondents. Lammle explained repeatedly at deposition and in his two affidavits that appellant issued the 1989 memorandum to address employees who voluntarily terminated their employment with Tonka. He specifically said:

> This new rule was not intended to address, and did not address, the right of employees to receive "accrued" vacation benefits when *involuntarily terminated without cause.* The Tonka employees who were terminated effective December 31, 1991 * * *, including [respondents], were involuntarily terminated without cause. As set forth above, the rule announced in the January 1, 1980 memorandum, * * * specifically provided that these employees were entitled to accrued vacation pay.

(Emphasis in original.)

The record does not support appellant's assertion that Lammle's deposition contained inconsistent testimony and raised questions of fact regarding whether the 1989 memorandum applied to respondents. When Lammle commented that "terminating" could mean employees voluntarily and involuntarily terminated, the full context of his remarks reveals that he was referring to the 1980 policy, not the 1989 memorandum. Having carefully reviewed the deposition in its entirety, given Lammle's detailed and consistent explanations of the policies, we discern no issue of fact; appellant has created alleged inconsistencies by taking comments out of context.

This record supports summary judgment for respondents. The pertinent paragraph of the 1989 memorandum did not apply to respondents and the 1980 policy entitled them to receive their 1991 accrued vacation time.

## DECISION

The district court properly granted summary judgment for respondents who had met

---

the vacation time eligibility requirements under the company's 1980 policy.

**Affirmed.**

---

*See Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 707 (Minn.1992) (employer must communicate offer to employee whom offer addresses). The employees who continued their employment under the new policy accepted the new terms and provided the necessary consideration for the contract. *See Pine River,* 333 N.W.2d at 627 (retention of employment is acceptance and consideration).

While the district court analyzed this issue properly, this discussion is really a reinforcing basis for our decision because the portion of the 1989 memo at issue here, a modification of the 1980 contract, did not apply to respondents because respondents were involuntarily terminated without cause.