Gregory A. KVIDERA, Respondent,

v.

ROTATION ENGINEERING AND MANUFACTURING CO., Appellant.

No. A04–2493.

Court of Appeals of Minnesota.

Nov. 8, 2005.

Andrew Chad McKenney, Bradley D. Hendrikson, Donohue McKenney Ltd., Minneapolis, MN, for respondent.

Diane B. Bratvold, Shelley R. Arff, John D. Thompson, Rider Bennett, LLP, Minneapolis, MN, for appellant.

Considered and decided by WORKE, Presiding Judge; STONEBURNER, Judge; and HUDSON, Judge.

## OPINION

WORKE, Judge.

In this appeal from posttrial motions in a claim for breach of an employment contract and violation of Minn.Stat. § 181.13 (2004), the employer argues the district court: (a) erred in construing the employment contract as terminable for just cause rather than as an at-will contract; (b) erred in applying statutory penalties under Minn.Stat. § 181.13(a), because it provides for penalties only for unpaid wages and commissions and not for an unpaid bonus; and (c) abused its discretion in awarding attorney fees for both common law and statutory claims. We affirm in part, reverse in part, and remand.

## FACTS

James Lorence, Sr. is the sole owner of appellant Rotation Engineering and Manufacturing Company. Appellant hired respondent Gregory A. Kvidera as its general manager in March 2001. When respondent was hired, he did not have a written contract, but signed appellant's employee handbook, which provided that respondent was an at-will employee.

In July 2001, Lorence promoted respondent to president of the company. On August 3, 2001, respondent and Lorence signed a document titled, "Employment Contract." Pursuant to the document, respondent became the company's president for a term commencing July 1, 2001, and concluding June 30, 2002. The one-page document set forth a variety of terms regarding respondent's employment, including respondent's title, salary and vacation plan. The document also specifically detailed the criteria used to calculate respondent's annual bonus, including four objective goals and a fifth subjective performance evaluation by designated employees and officers.

As the 2001 employment contract term was about to expire, respondent submitted a proposal for a new contract to Lorence. Following edits by Lorence and Deborah Cooper (the company's bookkeeper and Lorence's daughter), a final document entitled "Employment Contract Between Rotation Engineering and Gregory A. Kvidera" was drafted. Respondent and Lorence signed the document on May 31, 2002. The document provided:

Salary start first pay check in June, 2002

Bonus below is for fiscal year 2003 (Bonus per 2002 contract to be paid as per 2002 contract)

Agreement runs through June 30, 2003.

The document then set forth the terms of respondent's employment including respondent's title, salary, vacation time, and company credit card. As with the 2001 employment contract, the 2002 employment contract included the criteria used to calculate respondent's annual bonus.

On September 9, 2002, appellant terminated respondent without explanation. That same day, respondent contacted appellant's counsel to request written reasons for his termination under Minn.Stat. § 181.233 (2004). Appellant's counsel replied by letter that respondent was terminated due to irregularities in computer equipment and false documentation of expense reimbursement submissions. Respondent believed, however, that he was terminated because Lorence's adult children did not want him to be president.

Respondent commenced a lawsuit against appellant on November 19, 2002. The complaint alleged that appellant breached the 2002 employment contract by terminating respondent without cause and, therefore, owed respondent his bonus and lost wages according to the terms of the employment contracts as well as damages. The complaint also sought relief under Minn.Stat. § 181.13(a) (2004), which provides for a statutory penalty for failure to promptly pay wages. Appellant counterclaimed, alleging that respondent was not entitled to any lost compensation because respondent breached his fiduciary duty, converted company property, and made fraudulent misrepresentations.

One specific area of dispute centered on respondent's 2001–2002 bonus earned pursuant to the 2001 employment contract. The 2001 employment contract provided for the bonus to be distributed bi-annually, and respondent received an $8,000 bonus mid-way through the 2001 contract. On July 10, 2002, respondent submitted to Lorence a memorandum summarizing how he had met the performance goals of the bonus plan entitling him to the second distribution. Respondent's 2001–2002 bonus was due on August 1, 2002. According to respondent, however, he volunteered to defer the distribution of his bonus at that time to aid appellant's cash flow. Upon termination, respondent demanded that appellant pay him the remainder of the 2001–2002 bonus immediately. Initially, appellant did not dispute that respondent was owed his bonus but did not distribute the bonus.

Appellant moved for summary judgment arguing that respondent was not entitled to damages because (a) respondent was terminable at will, and (b) appellant had good cause for terminating respondent because respondent breached his fiduciary duties. Appellant argued that the 2001 and 2002 employment agreements were detailed bonus plans and not contracts for a specific duration of employment. Appellant also denied that it owed respondent his 2001–2002 bonus arguing that respondent incorrectly calculated his bonus and misrepresented the bonus criteria.

In an order dated February 26, 2004, the district court denied appellant's motion for summary judgment. Finding appellant's assertion that the 2001 and 2002 documents were contracts only for a bonus plan "untenable," the district court concluded that the 2001 and 2002 documents constituted employment contracts of a specific duration. The district court then set for trial the issue of whether the actual reasons for respondent's termination were sufficient to constitute good cause for his termination. The district court also found disputed material facts as to the intended evaluative method of respondent's unpaid 2001–2002 bonus and whether respondent earned that bonus.

Trial commenced on May 3, 2004. On May 7, 2004, the jury returned a special verdict form, finding that appellant breached its 2001 and 2002 employment contracts with respondent and dismissing appellant's counterclaims. The jury awarded damages to respondent for appellant's breach of contract and for appellant's failure to pay the 2001–2002 bonus. The district court then determined that respondent was entitled to $5,480.77 in statutory penalties pursuant to Minn.Stat. § 181.13(a) and $54,545.42 in attorney fees pursuant to Minn.Stat. § 181.171, subd. 3 (2004). Including additional penalties and prejudgment interest, the district court ordered judgment in favor of respondent in the amount of $159,154.87. This appeal follows.

## ISSUES

I. Did the district court err in construing the employment contract as terminable for just cause rather than as an at-will contract?

II. Did the district court err in applying statutory penalties under Minn.Stat. § 181.13(a) (2004) for an unpaid bonus?

III. Did the district court abuse its discretion by awarding attorney fees for both common law and statutory claims under Minn.Stat. § 181.171 (2004)?

## ANALYSIS

### I.

■■■ Appellant first challenges the district court's denial of its motion for summary judgment, arguing that the district court erred in construing the 2001 and 2002 contracts as employment contracts modifying respondent's at-will status. On appeal from summary judgment, this court considers whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Contract interpretation is a question of law, which this court reviews de novo. *Employers Mut. Cas. Co. v. A.C.C.T., Inc.,* 580 N.W.2d 490, 493 (Minn.1998). "[T]he language found in a contract is to be given its plain and ordinary meaning." *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 67 (Minn. 1979).

■■■ "In the absence of an express or implied agreement to the contrary, ... Minnesota law presumes that employment for an indefinite duration is at will." *Gunderson v. Alliance of Computer Prof'ls,* 628 N.W.2d 173, 181 (Minn.App.2001), *appeal dismissed* (Minn. Aug. 17, 2001). In an at-will employment relationship, the employer can summarily dismiss the employee for any reason or no reason, and the employee is under no obligation to remain on the job. *Cederstrand v. Lutheran Bhd.,* 263 Minn. 520, 532, 117 N.W.2d 213, 221 (1962). The at-will rule may be rebutted, however, by the specific terms of the agreement. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 628 (Minn.1983). Under a

contract of specific duration, an employee may only be terminated during the period of the contract upon a showing that the employer had good cause. *See id.* ("[T]he general rule is that contracts for a *specific* duration can nonetheless be terminated during the period of the contract if the employer has good cause."); *Thomsen v. Indep. Sch. Dist. No. 91,* 309 Minn. 391, 392, 244 N.W.2d 282, 284 (1976) (stating that a "fixed-term" contract is terminable only for cause).

■ Here, the district court determined that the 2001 and 2002 contracts were employment agreements for a specific duration, which changed respondent's original at-will relationship into a terminable-only-for-cause relationship. Appellant argues that respondent remained an at-will employee, despite the 2001 and 2002 contracts, because both of those documents are silent as to termination and neither document contained a term explicitly modifying respondent's at-will status. In support of its argument, appellant cites *Rosenberg v. Heritage Renovations, LLC,* 685 N.W.2d 320 (Minn.2004), and *Harris v. Mardan Bus. Sys., Inc.,* 421 N.W.2d 350 (Minn.App.1988), *review denied* (Minn. May 18, 1988). Neither case supports appellant's misapplication of the at-will doctrine because both cases involved employment for an indefinite duration. *See Rosenberg,* 685 N.W.2d at 326 (holding that employment was at will despite a reference to events in the employment listing that could be used· as a termination date); *Harris,* 421 N.W.2d at 354. (holding that a buy-back agreement for company stock in the event of termination did not modify at-will employment status). Contrary to appellant's assertion, an employment agreement may supersede the at-will doctrine if it contains either termination conditions *or* a specified duration. *See Dorso Trailer Sales, Inc. v. Am. Body &*

*Trailer, Inc.,* 372 N.W.2d 412, 414 (Minn. App.1985) (stating that employment contracts are ordinarily terminable at will if they "do not contain express provisions for duration or termination"), *review denied* (Minn. Oct. 18, 1985). Thus, the district court correctly determined that a contract for a specific duration is sufficient to create employment terminable for cause.

■ Appellant next argues that the district court erred in its interpretation of the 2001 and 2002 contracts. Characterizing the 2001 and 2002 contracts as "bonus agreements" or "compensation agreements" rather than employment contracts, appellant argues that the specific references to a one-year duration refer only to the period for calculating respondent's bonus and are, therefore, insufficient to convert an at-will employee into employment terminable for cause. *See Rognlien v. Carter,* 443 N.W.2d 217, 220 (Minn.App. 1989) (holding that a letter outlining an employee's salary structure was insufficient to modify at-will status), *review denied* (Minn. Sept. 21, 1989). We disagree.

Construing the 2001 and 2002 employment agreements as a whole, the contracts were employment agreements of a specified duration. The contracts are unambiguously titled "Employment Agreement," and contain general terms of employment unrelated to respondent's bonus or compensation, including respondent's job title, vacation time, and insurance. Examining the layout of the agreements, the dates of duration are listed immediately below ·respondent's title in the 2001 agreement and immediately below the document title in the 2002 agreement. The dates do not exclusively govern respondent's bonus period. Furthermore, the documents were signed by both parties, suggesting an intent to bind both parties to an employment agreement, rather than a unilateral promise of a specific compensation. Because

the unambiguous language of the 2001 and 2002 employment contracts provides for an employment agreement of a specified duration, the district court did not err in denying appellant's motion for summary judgment.

## II.

■ Appellant next challenges the district court's judgment awarding respondent statutory penalties for unpaid wages pursuant to Minn.Stat. § 181.13(a) (2004), arguing that respondent's 2001–2002 bonus was not a "wage" for purposes of the statute. The interpretation of a statute and its application to undisputed facts raise questions of law that we review de novo. *Oslund v. Johnson,* 578 N.W.2d 353, 356 (Minn.1998).

■ Minn.Stat. § 181.13(a) provides:

When any employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default. The discharged employee may charge and collect the amount of the employee's average daily earnings at the rate agreed upon in the contract of employment, for each day up to 15 days, that the employer is in default, until full payment or other settlement, satisfactory to the discharged employee, is made.

The statute does not otherwise define "wages." The supreme court has noted that the purpose of the statute is to "penalize employers who fail to pay their employees' wages promptly." *Hansen v. Remer,* 160 Minn. 453, 462, 200 N.W. 839, 843 (1924). Because the statute is penal in nature, it must be strictly construed. *Chatfield v. Henderson,* 252 Minn. 404, 410, 90 N.W.2d 227, 232 (1958). Here, the district court awarded respondent statutory penalties under Minn.Stat. § 181.13 (2004) after the jury found that appellant breached its 2001 employment contract by failing to pay respondent's 2001–2002 bonus. Whether an annual bonus is a "wage" for purposes of section 181.13 is a question of first impression in Minnesota.

Minnesota case law interpreting section 181.13 provides some direction. This court has upheld statutory penalties under section 181.13 for unpaid vacation time, concluding that vacation pay was a "wage" under the statute. *Brown v. Tonka Corporation,* 519 N.W.2d 474 (Minn.App.1994). In *Brown,* this court first noted that an employer's liability for vacation time is wholly contractual and that an employer is obligated to provide vacation pay when employees have satisfied the eligibility requirements. *Id.* at 477. The court then rejected the argument that vacation benefits are not "earned," reasoning that the employees had accrued the vacation time pursuant to the employer's guidelines and had provided consideration for their vacation benefits by working the previous year. *Id.* Because the employer received the benefit of the employees' work product, the employer was obligated to pay the employees for their accumulated, accrued vacation time. *Id.*

■ Appellant argues that bonuses are distinguishable from the vacation benefits examined in *Brown,* as bonuses may not be actually earned at the time of an employee's discharge. Furthermore, appellant suggests that the *Brown* analysis is not applicable to bonuses because bonuses, unlike vacation pay, are not compensation for an employee's services and are not based upon length of service and time worked. Rather, bonuses are a gratuity.

Appellant mistakenly relies on broad, hypothetical declarations about the nature of bonuses generally in its analysis of *Brown,* and not the record evidence before this court. As noted above, respondent contracted for his 2001–2002 bonus as a part of his overall compensation package. This court is not confronted with a claim for statutory penalties involving a pro rata portion of an unvested bonus, a profit sharing plan, or a gratuitous bonus subject solely to the employer's discretion. When an employee contracts for a bonus in exchange for his services to the employer, and the right to that bonus vests prior to the employee's termination, an employer's failure to pay that unpaid bonus within 24 hours of the employee's demand subjects the employer to a claim for statutory penalties under Minn.Stat. § 181.13.

■ Applying the reasoning in *Brown* to the matter at hand, we conclude that respondent's earned bonus constituted a "wage" for purposes of section 181.13. The decision in *Brown* was based, in part, on the contractual nature of vacation benefits:

> It is beyond dispute that an agreement to pay vacation pay to employees made to them before they performed their services, and based upon the length of service and time worked, is not a gratuity but is a form of compensation for services, and when the services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or other form of compensation.

*Brown,* 519 N.W.2d at 477. Respondent's 2001–2002 bonus was an integral and negotiated part of his compensation package for 2001. Respondent contracted with appellant in 2001 to receive a bonus based on the satisfaction of four objective, company-performance based criteria and one subjective personal evaluation. While the amount respondent would receive and the appropriate evaluation criteria remained questions of fact, respondent's right to the undetermined amount vested as of July 1, 2002, the day after the expiration of the 2001 contract. Therefore, respondent's 2001–2002 bonus was owing prior to his termination. As president of the company, respondent's services contributed to appellant's profitability, and appellant received the benefit of respondent's work product. The record reflects that, in this instance, respondent's bonus was nondiscretionary and actually earned at the time of his discharge.

We note that other jurisdictions interpreting similar statutory language have reached the same conclusion. *See Rohr v. Ted Neiters Motor Co.,* 758 P.2d 186, 188 (Colo.Ct.App.1988) (holding that a bonus calculated based on a percentage of the company's profits was a wage under Colorado's wage-penalty statute because the bonus was vested and determinable as of the date of termination, was disproportionately large in comparison to the employee's salary, and was owed as compensation for services performed by the employee); *Cap Gemini Am., Inc. v. Judd,* 597 N.E.2d 1272, 1284–85 (Ind.Ct.App.1992) (holding that the computation of an incentive bonus based on work done was a wage, reasoning that wages include not only periodic monetary earnings, but also "the other benefits to which he is entitled as part of his compensation"); *Knutson v. Snyder Indus., Inc.,* 231 Neb. 374, 436 N.W.2d 496, 499 (1989) (holding that a bonus could be a wage if it was an inducement rather than a reward, i.e., if it was previously agreed to and the stipulated conditions were satisfied).

Appellant argues that the plain statutory language compels the interpretation that bonuses are not wages. Because section 181.13 includes the language "whether

the employment was by the day, hour, week, month, or piece or by commissions," appellant contends that this language evidences the legislature's intent to regulate only terms of employment that are by the day, hour, week, etc. According to appellant, because bonuses are not determined according to these intervals, they fall outside the purview of the statute.

Appellant's interpretation pulls the interval language out of context and strains the plain meaning of section 181.13. The sentence containing the interval language is as follows: "If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default." The interval language describes the pay period rather than a required method of calculating, or rate of, pay. The plain meaning of this language is that an employer is required to pay the earned wages within 24 hours regardless of the interval at which the employee's pay was calculated.

The district court's interpretation of the statute is supported by the plain meaning of the statute and Minnesota case law. As such, the district court did not err in applying statutory penalties under Minn. Stat. § 181.13 for respondent's unpaid 2001–2002 bonus.

### III.

Finally, appellant challenges the district court's award of attorney fees to respondent, arguing that the district court erred in awarding fees attributable to respondent's common law claim as well as respondent's claim for statutory penalties under Minn.Stat. § 181.13. A district court's decision awarding attorney fees will not be reversed absent an abuse of discretion. *State by Humphrey v. Alpine Air*

*Prods.*, 490 N.W.2d 888, 896 (Minn.App. 1992), *aff'd*, 500 N.W.2d 788 (Minn.1993).

Recovery of attorney fees must be based on either statute or contract. *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 87 (Minn.2004). Minn.Stat. § 181.171, subd. 1 (2004), allows an injured employee to bring civil suit against an employer that violates section 181.13. If such a claim is successful, and a violation of section 181.13 is found, the district court will order the employer to pay the attorney fees and court costs of the employee. Minn.Stat. § 181.171, subd. 3 (2004). Attorney fees are not recoverable by a common-law breach-of-contract case absent "a specific contract or statute authorizing such recovery." *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 53 (Minn.1983).

Appellant argues that the district court's award of $51,144 in fees incurred pursuant to respondent's claims for both breach of contract and lost wages under section 181.13 creates a statutory exception for an award of fees in a common law claim without an explicit legislative mandate. Respondent argues that the award was proper because all of his claims were effectively brought under section 181.13 as appellant denied all his claims on the same basis and refused to pay his earned bonus. We disagree.

The district court improperly awarded fees attributable to a common law breach-of-contract claim. Section 181.13 authorizes statutory penalties for lost or unpaid wages upon an employee's demand. The first count of respondent's complaint alleged wrongful termination without just cause, which is a claim for damages and not lost wages. Accordingly, respondent's common law claim was not transformed into a section 181.13 claim by virtue of appellant's answer and counterclaim. Moreover, statutory penalties permitting

the award of attorney fees are designed to encourage parties with potentially modest damages to bring their claims. *See Giuliani v. Stuart Corp.,* 512 N.W.2d 589, 596–97 (Minn.App.1994) (noting that the legislature specifically provided for an award of attorney fees in enacting the Minnesota Human Rights Act because the cases often involve modest damages and the attorneys who prevail in discrimination cases serve an important public function). Here, the district court awarded approximately $77,000 in damages for appellant's breach of contract and approximately $16,000 in damages for failing to pay respondent's 2001–2002 bonus. Given the disproportionate awards, permitting attorney fees in addition to damages for the breach-of-contract claim does not further the legislative purpose of encouraging claims for lost wages. *Cf. O'Brien v. Phillips Motors Excelsior, Inc.,* 288 Minn. 183, 187, 179 N.W.2d 158, 161 (1970) (noting that "[i]t is well settled that penalties, including attorney[ ] fees, imposed by statute must be moderate and reasonably sufficient to accomplish a proper legislative purpose. . . .") Accordingly, we reverse the district court's award of attorney fees.

Neither the district court's findings nor the supporting documentation clearly set out the fees incurred in pursuing the claim for respondent's unpaid 2001–2002 bonus. Therefore, we remand this issue to the district court for a new award. Acknowledging that the fees attributable to the statutory claim may not be entirely distinct from the common law claim, we afford the district court considerable discretion is crafting the new fees award. The district court may in its discretion open the record to take additional evidence. Because we are remanding for a new award of attorney fees, we deny respondent's request for attorney fees incurred in this appeal. Respondent may request fees by separate motion pursuant to Minn. R. Civ. App. P. 139.06.

## DECISION

Because the district court did not err in interpreting the parties' 2001 and 2002 contracts as employment contracts of a specific duration modifying respondent's at-will status, and because the district court did not err in determining that respondent's 2001–2002 bonus was a "wage" pursuant to Minn.Stat. § 181.13 (2004), we affirm. Because the district court improperly awarded attorney fees for both respondent's common law and statutory claims, we reverse the fees award and remand for a new award.

**Affirmed in part, reversed in part, and remanded.**