Darwin **ROBERTS**, et al., Appellants,

v.

**BRUNSWICK CORPORATION,**
**et al., Respondents.**

No. A09–1855.

Court of Appeals of Minnesota.

June 15, 2010.

Steven A. Smith, Rachhana T. Srey, Robert L. Schug, Nichols Kaster, PLLP, Minneapolis, MN, for appellants.

Charles F. Knapp, Loralei C. Lannan, Faegre & Benson LLP, Minneapolis, MN, for respondents.

Considered and decided by LARKIN, Presiding Judge; TOUSSAINT, Chief Judge; and COLLINS, Judge.*

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

TOUSSAINT, Chief Judge.

On appeal from judgment following a court trial on a breach-of-employment-contract claim, appellants, Darwin Roberts, Dave Dubs, Greg Morse, John Westhoffl, Kenneth Mathewson, Jeff Small, Arthur Buntrock, Roger Grindstaff, James Baron, Jack Herr, Vincent Bernu, Richard Sydow, Steve Eklund, Leroy Atkinson, Michael Kroupa, Diana Makimen, Suzzy Harper, Gary Harper, and Thomas Kimmes, individually and on behalf of all others similarly situated, assert that the district court erred by finding that the vacation policy in the employee-handbook contract was effectively modified and appellants suffered no damages from the alleged breach. Respondents Brunswick Corporation and Lund Boat Company argue that the district court erred in finding that the employee handbook created a unilateral contract. We affirm the district court's decision ruling in favor of respondents, but because we conclude that the district court erred in concluding that the handbook created a unilateral contract, we reverse that determination.

## FACTS

In April 2004, Brunswick Corporation purchased Lund Boat Company from Genmar Holdings, Inc. Appellants are individuals previously and currently employed by respondents.

At the time of the acquisition, Genmar's employee handbook was in effect. That handbook included a vacation-policy provision, which was referred to as a model-year policy. Under the model-year policy, vacation was earned on July 1 of each model year, which began on July 1 and ran through June 30. The amount of vacation

earned was based on the time and service provided in the preceding model year; thus, under Genmar's policy, employees would not earn vacation until completing a year of service. Vacation earned on July 1, but not used in that model year, would result in a cash payout at the end of the model year.

Brunswick's employee handbook also includes a vacation policy. Unlike Genmar's model-year policy, Brunswick's vacation policy provides for accrual of vacation, rather than earned vacation. Brunswick's vacation policy is referred to as "earn and burn," meaning an employee uses what he or she earns and rollovers are not allowed. Brunswick's vacation policy is more generous than Genmar's policy, especially for the first few years of employment.

Beginning model year July 1, 2004, the Genmar handbook was still in place. At an open-enrollment meeting held in October 2004, Brunswick's vacation policy was announced. The plant was closed so that the entire employee population could attend the meeting. After the meeting, human resources received questions regarding the vacation policy. Informational meetings were held to address employee's questions and concerns. The meetings were open to anyone. Attendance was not required.

It was announced at the informational meetings that as of July 1, 2005, Brunswick's vacation policy would be implemented through the end of the year in order to get to the 2006 calendar year. Depending on an employee's seniority on July 1, he or she would receive half of the credited vacation time to cover the six months until January 2006. Because employees were unhappy with this decision, it was decided that July 1, 2005, through December 31, 2005, would be combined with January 1, 2006, to December 31, 2006, to make a year and one-half worth of vacation avail-

able to the employees to use during the 18–month transition period. The 18–month transition plan was announced to employees at the end of October 2004. Brunswick's employee handbook, dated June 1, 2005, was distributed to employees sometime between July 5 and July 8, 2005.

In June 2007, appellants filed a class-action complaint against respondents. Appellants alleged that respondents entered into a contract with appellants whereby appellants earned vacation pay on July 1 of each year in consideration for work performed during the previous 365–day period. Appellants further alleged that respondents breached the contract by refusing to honor their promise to credit appellants with earned vacation pay and, as a result appellants suffered damages.

Respondents moved for summary judgment, and appellants moved for partial summary judgment. The district court denied the cross motions for summary judgment, determining that there were genuine issues of material fact regarding: (1) the effect of meetings at which the vacation policy was discussed; (2) how retired or deceased employees were treated during the transition period; and (3) the effect of the transition period from Genmar's handbook to Brunswick's handbook. In a separate order, the district court granted partial summary judgment in favor of appellants, concluding that Genmar's handbook created a unilateral employment contract because it refers to vacation pay in the context of a general benefit.

In late January 2009, the district court held a court trial, which was limited to two issues: whether the employment contract was breached, and, if so, what damages resulted. On June 11, 2009, the district court issued an order for judgment. The district court concluded that while Genmar's employee handbook created a unilat-

eral employment contract, it was effectively modified by respondents in October 2004, in part because Genmar's handbook includes a reservation of the right to make changes to the handbook as necessary. The court concluded that appellants knew or should have known that the new vacation policy was different from the old policy, evidenced by their complaints before and during October 2004. The district court concluded that the new policy modified the prior vacation policy and that appellants' continued employment established their acceptance of the modification. Finally, the court concluded that appellants suffered no loss because appellants do not receive less vacation under the new policy; appellants received the same amount, if not more, vacation under the new vacation policy.

## ISSUES

I. Did the district court err in finding that the employee handbook created a unilateral contract?

II. Did the district court err in declining to find that respondents breached the employment contract?

III. Did the district court err in determining that, even if respondents breached the employment contract, appellants did not suffer any damages?

## ANALYSIS

■ The parties waived trial by jury, and the district court held a court trial. On appeal from the decision of a district court sitting without a jury, this court determines whether the evidence sustains the findings of fact and whether the findings sustain the conclusions of law and judgment. Minn. R. Civ. P. 52.01; *see Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn.1990) (applying clearly erroneous standard to trial without jury). While we afford due regard to the district court's opportunity to judge witness credibility, we do not defer to a district court on purely legal conclusions. Minn. R. Civ. P. 52.01; *Frost–Benco Elec. Ass'n v. Minn. Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

## I.

■ Respondents argue that the district court erred in concluding that the Genmar employee handbook created a unilateral employment contract. Respondents contend that the employee handbook included an appropriate disclaimer precluding the creation of a contract. Appellants argue that when an employer makes a definite and specific offer for vacation benefits, the presence of an otherwise valid disclaimer will not prevent the formation of a unilateral contract. Whether an employment handbook creates a contract is a question of law, which this court reviews de novo. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 740 (Minn.2000); *Campbell v. Leaseway Customized Transp., Inc.*, 484 N.W.2d 41, 43 (Minn.App.1992).

■ A unilateral contract of employment may be based on provisions in an employee handbook. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 627 (Minn.1983). "[A]n employee handbook may constitute terms of an employment contract if (1) the terms are definite in form; (2) the terms are communicated to the employee; (3) the offer is accepted by the employee; and (4) consideration is given." *Feges v. Perkins Rests., Inc.*, 483 N.W.2d 701, 707 (Minn.1992). "Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." *Pine River*, 333 N.W.2d at 626.

■■ But even if an employee handbook constitutes an employment contract

because it meets the conditions set out in *Pine River,* other language in the handbook can demonstrate that an employer does not intend to create an enforceable contract. A disclaimer in an employment handbook that clearly expresses an employer's intent will prevent the formation of a contractual right. *See Michaelson v. Minn. Mining & Mfg. Co.,* 474 N.W.2d 174, 180 (Minn.App.1991) (holding that disclaimer in handbook was valid expression of employer's intentions), *aff'd mem.,* 479 N.W.2d 58 (Minn.1992); *Audette v. Ne. State Bank of Minneapolis,* 436 N.W.2d 125, 127 (Minn.App.1989) (holding that disclaimer in handbook that handbook is not intended to create contract was understandable and enforceable).

■ The Genmar and Brunswick employee handbooks' disclaimer provides:

> Nothing in this employee handbook should be construed as a contract. [Employer] has the right to change these policies, procedures, and benefits as it deems appropriate without notice. Responsibility for final interpretation of any specific issues as they relate to policies, procedures, and benefits lies with the senior management of [employer].

The district court considered the applicability of the disclaimer language and, relying on an unpublished opinion from this court, *Berglund v. Grangers, Inc.,* C8–97–2362, 1998 WL 328382 (Minn.App. June 23, 1998), stated that "vacation benefits, as a matter of law, are part of the consideration for employment whereas in some cases an employee disciplinary policy may be nonbinding"; thus, to effectuate a disclaimer regarding vacation policy would allow the employer to freely modify the contract retroactively. The court also cited to *Lee v. Fresenius Med. Care, Inc.,* 741 N.W.2d 117 (Minn.2007), in stating that an employee handbook constitutes an enforceable contract when the terms are definite and

are communicated to the employees. The court also relied on a case from the Minnesota Federal District Court, *Gilbertsen v. Codex Corp.,* 4–89–308, 1990 WL 606165 (D.Minn. Nov. 14, 1990), *aff'd mem.,* 950 F.2d 727 (8th Cir.1991), in stating that a disclaimer could effectively undo provisions in the handbook that relate to policies that are specific enough to form the basis of a unilateral contract. Appellants likewise argue that because vacation benefits are a form of compensation and part of the basic consideration for employment, the presence of an otherwise valid disclaimer will not prevent the formation of a unilateral contract.

In *Berglund,* the employee was told upon his resignation that he could collect accrued vacation benefits. 1998 WL 328382, at *1. But on Berglund's last day of work, he was told that vacation benefits did not accrue until the anniversary of his hire date, which was two days away; therefore, he was not entitled to collect vacation pay. *Id.* The employer appealed the district court's determination that Berglund met the eligibility requirements for collecting vacation pay because the employee handbook stated that upon termination, employees would be paid for unused vacation time. *Id.* The employee handbook also included a disclaimer stating that "[p]olicies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind." *Id.* This court rejected the employer's argument that no contract was formed because of the disclaimer and that the court should consider the policy language as evidence as it would other extrinsic evidence to determine the actual operation of the policy. *Id.* at *2. This court determined that vacation benefits are part of the "consideration for employment" deeming them "wholly contractual" because they are a form of

compensation. *Id.* at *3. This court stated that "attachment of a disclaimer to a written vacation policy would mean that an employee could never enforce the policy's plain language on summary judgment" and that "if an employee is not entitled to rely on the language of an employer's written description of the consideration for his employment, the employer effectively is free to modify the contract retroactively by inserting compensation terms under which the employee might not have agreed to work." *Id.*

*Berglund* did cite a published case, *Brown v. Tonka Corp.,* 519 N.W.2d 474, 475 (Minn.App.1994), in which we held: "An employer is obligated to provide accrued vacation pay to discharged employees who have met the vacation pay eligibility requirements." In *Brown,* when two terminated employees sought compensation for accrued vacation days, their former employer refused payment. 519 N.W.2d at 475. The employees alleged that the employer breached the employment contract. *Id.* This court determined that vacation pay is "wholly contractual" and that "an employer is obligated to provide vacation pay when employees have met the vacation pay eligibility requirements." *Id.* at 477.

Although the district court relied on *Brown,* it is distinguishable for at least two reasons. First, in *Brown* the district court determined that a unilateral contract existed, and the employer did not challenge that finding. *Id.,* n. 1. Second, there was no discussion of the existence of a disclaimer. The analysis focused on interpretation of the vacation policy and briefly on the modification of the existing contract. *Id.* at 477–78, n. 2. Further, while the district court relied on *Berglund,* it is not persuasive as an unpublished opinion. *See* Minn.Stat. § 480A.08, subd. 3 (2008) ("Unpublished opinions of the Court of Appeals

are not precedential."). *Fresenius* is also not illustrative because the case involves no discussion pertaining to a disclaimer. 741 N.W.2d at 119–21. The issue did not involve vacation benefits; the issue involved a different provision in an employee handbook regarding whether an employee who is terminated for misconduct is ineligible for payment of unused paid time-off. *Id.* at 122.

Based on the *Michaelson* holding that a disclaimer in a handbook is a valid expression of the employer's intentions, 474 N.W.2d at 180, and the *Audette* holding that an understandable disclaimer in a handbook that the handbook is not intended to create a contract is enforceable, 436 N.W.2d at 127, we conclude that the disclaimer effectively prevented the formation of a contract.

## II.

Because we conclude that a unilateral contract was not formed, without a contract there can be no breach. But even if a contract had been formed, no breach occurred. In *Pine River,* the supreme court determined that when an employee handbook is considered a unilateral contract, the offer is communicated when the handbook is distributed to employees, and the offer is accepted when the employee retains employment with knowledge of new or changed conditions. 333 N.W.2d at 626–27.

 If a contract existed, respondents effectively modified it. First, as the district court noted, the employee handbook provides that "due to the ever-changing needs of the company, these guidelines or policies may change." *See id.* at 627 (stating: "Language in the handbook itself may reserve discretion to the employer in certain matters or reserve the right to amend or modify the handbook provisions."). Second, respondents modified

the contract by adopting the new vacation policy, which was communicated to appellants. Appellants contend that the policy was not modified before distribution of the Brunswick handbook in July 2005. Although an "employer's general statements of policy are no more than that and do not meet the contractual requirements for an offer," there is no requirement that modifications must be in writing. *Id.* at 626. There must be an "outward manifestation[ ] of the parties." *Id.* Here, the changes were announced at the October 2004 open-enrollment meeting, which accommodated full workforce-population attendance, were explained in open-enrollment documentation, and were presented and discussed at various informational meetings designed specifically to address appellants' concerns regarding the new vacation policy.

Third, appellants had knowledge of the modifications. This knowledge was evidenced by the numerous complaints respondents received, which compelled respondents to schedule the informational meetings that occurred in October 2004. Finally, appellants accepted the modifications because appellants continued to work for respondents. Therefore, if a unilateral contract existed, it was effectively modified.

### III.

 Finally, the district court determined that appellants were not harmed because employees would receive the same vacation benefits under both policies. A plaintiff may recover damages that "naturally and necessarily result from the alleged breach." *Logan v. Nw. Bank Minn., N.A.,* 603 N.W.2d 659, 663 (Minn. App.1999). Appellants argue that respondents failed to pay them for vacation credit that they claim was earned on July 1, 2005. Appellants seek expectation damages. *See*

*id.* (stating that expectation damages "attempt to place the plaintiff in the same position as if the breaching party had complied with the contract"). "The determination of actual damages is a fact question reviewable under the clearly erroneous standard." *Teachout v. Wilson,* 376 N.W.2d 460, 464 (Minn.App.1985), *review denied* (Minn. Dec. 30, 1985). But a "breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach." *Jensen v. Duluth Area YMCA,* 688 N.W.2d 574, 578–79 (Minn.App.2004).

 Appellants argue that they suffered damages because they provided work for respondents in exchange for vacation pay but were never compensated for it. Appellants were not harmed. The Genmar policy states: "Vacation pay is earned on July 1 of each model year and calculated based on the time in service during the previous model year." Thus, vacation time was not accrued during the previous model year and then distributed on July 1; rather, it was earned on July 1, and the previous model year was used to calculate the vacation pay that was earned. The vacation earned on July 1 was to be used that model year, which coincides with the policy that employees do not earn vacation until they have provided one year of service. If appellants were allowed to have the vacation earned on July 1 credited to them and then also receive the benefit of the new vacation policy, appellants would receive double vacation benefits. Appellants receive the same vacation benefits under both policies. Therefore, the district court did not err in determining that appellants suffered no damages.

### DECISION

Because the employee handbook included a provision that precluded the formation of an employment contract, the dis-

trict court erred in finding that a unilateral employment contract existed. Because there was no employment contract, there was no breach and no resulting damages.

**Affirmed in part and reversed in part.**