*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1507**

Wayne Earl Dahl,
Appellant,

vs.

Stephen Sean Cummings, et al.,
Respondents.

**Filed March 30, 2015
Affirmed
Stoneburner, Judge**[*]

Carver County District Court
File No. 10-CV-13-682

Randall D. B. Tigue, Randall Tigue Law Office, P.A., Golden Valley, Minnesota (for appellant)

Ned E. Ostenso, Merrigan, Brandt, Ostenso & Cambre, P.A., Hopkins, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Hudson, Judge; and Stoneburner, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**STONEBURNER**, Judge

Appellant, owner of collectible vehicles that were destroyed in a warehouse fire where the vehicles were stored, challenges the dismissal, after a court trial, of his action against the storage facility and its owner for conversion and negligence. We affirm.

**FACTS**

In early 2000, appellant Wayne Earl Dahl and respondent Stephen Sean Cummings discussed Dahl's storage of property, including collectible vehicles and a snowmobile trailer, on property in Sibley County owned by Cummings. At the time, there were three buildings on the property, but only one of the buildings was available and suitable for storage. Dahl and Cummings did not discuss or agree on specific terms and conditions of storage before Dahl placed the vehicles, with keys, in the building.

The district court credited Dahl's testimony that he gave Cummings $1,000 at the time the vehicles were stored, but the district court found that this payment was a gratuity rather than payment for storage because Dahl and Cummings had not agreed to any terms of storage. Dahl did not give Cummings any other money for storage.

The district court found that Dahl had complete and unfettered access to his property at all times. Although Dahl rarely visited the storage facility, he removed and replaced stored property without any interaction with Cummings.

In April 2001, Cummings established respondent Shamrock Storage, L.L.C. (Shamrock) and leased the storage buildings to Shamrock for Shamrock to operate as a

storage business. Dahl was unaware of Shamrock's creation until the initiation of this action.

Shamrock renovated the largest building on the site and, in 2003, Dahl's vehicles were moved into that building without notice to or consent by Dahl. The district court credited Cummings' testimony that when Dahl was at the warehouse in 2007 he saw his vehicles, which, according to Cummings, were parked right next to Dahl's snowmobile trailer in the large building. Dahl did not express any concern over the location of their storage or the fact that they had been moved.

In July 2008, a Shamrock employee was using a torch to perform renovations on the roof of the large storage building. Sparks ignited material in the warehouse, and the fire spread rapidly, totally destroying the building and all property inside of it. Shamrock sold the iron frames from Dahl's vehicles as scrap metal and retained the proceeds.

Dahl learned about the destruction of his property in 2012. Dahl sued Cummings and Shamrock alleging breach of contract, conversion, and negligence. After a bench trial, the district court found that: (1) no contract existed between the parties; (2) Shamrock possessed Dahl's vehicles as a bailee, with an obligation to take reasonable care of them and return them to Dahl on request; (3) Dahl failed to prove that Shamrock converted the vehicles; (4) Dahl established conversion against Shamrock with regard to the scrap metal, but lack of evidence on the value of the metal prevents recovery on that claim; and (5) Shamrock rebutted any presumption of negligence that arose under the bailment or the theory of res ipsa loquitor. The district court entered judgment for

Cummings and Shamrock, dismissing all of Dahl's claims. This appeal, challenging dismissal of claims for conversion and negligence, followed.

**D E C I S I O N**

**1.     Standard of review**

On appeal from the decision of a district court sitting without a jury, this court reviews whether the evidence sustains the findings of fact and whether the findings of fact sustain the conclusions of law and judgment. *Roberts v. Brunswick Corp.*, 783 N.W.2d 226, 230 (Minn. App. 2010), *review denied* (Minn. Aug. 24, 2010). We will not set aside a finding of fact unless the finding is clearly erroneous, giving due regard to the district court's credibility findings and viewing the evidence in the light most favorable to the district court's findings. Minn. R. Civ. P. 52.01; *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 507 (Minn. 2012). Findings of fact are clearly erroneous when we are "left with the definite and firm conviction that a mistake has been made." *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013) (quotation omitted).

**2.     Conversion**

Conversion is the willful, unjustified interference with another's personal property that deprives the owner of use and possession. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). "Any distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it, is a conversion." *McDonald v. Bayha*, 93 Minn. 139, 141, 100 N.W. 679, 680 (1904).

4

Dahl argues that a bailee's movement of bailed goods without the owner's knowledge or consent constitutes conversion as a matter of law, citing *McCurdy v. Wallblom Furniture & Carpet Co.*, 94 Minn. 326, 102 N.W. 873 (1905) (stating that a bailee may be liable for the destruction of goods if the bailee removes the goods from an agreed-to place to another place of storage without notice or consent of the bailor). *McCurdy* is based on cases holding that "appropriating an article in bailment to a different use than that agreed on is a conversion." *Id.* at 329, 102 N.W. at 874.

Dahl's reliance on *McCurdy* rests on his assertion that "it is clear that the storage location was an essential element of the bailment," an apparent argument that the district court clearly erred by finding that the parties had no agreement that the vehicles would be stored only in the building in which they were originally placed. But the district court specifically discredited Dahl's testimony that he expressed concern to Cummings about the safety of storing his vehicles in a different building, noting that at the time of the initial storage, only one building was suitable for storage. And the district court credited Cummings' testimony that, in 2007, Dahl saw that his vehicles were now stored in the large building and did not express any concern about the safety of storage in that building. Because we defer to the district court's credibility determinations, the record supports the district court's finding that Dahl had no agreement with Cummings or Shamrock that his vehicles would remain in the building in which they were first placed. *McCurdy* is therefore distinguishable and does not apply to the circumstances of this case. Because there was no agreement restricting storage of Dahl's vehicles to a

5

particular building, the district court's findings support its conclusion that moving Dahl's vehicles to the larger building did not constitute conversion.[1]

### 3. Negligence

Dahl successfully argued to the district court that under the law of bailment, and even in the absence of bailment, under the doctrine of res ipsa loquitur, Cummings and Shamrock had the burden to prove absence of negligence to defeat Dahl's claim for damages under a negligence theory. The district court imposed that burden under both theories and found it satisfied. On appeal, Dahl appears to assert that this finding is clearly erroneous.

Dahl asserts that "the only evidence as to the origin of the fire" is the report of the state fire marshal from which Dahl cites several findings that, he argues, "plainly indicate negligence."

But Troy Johnson, the welder who was in charge of planning and implementing the work that resulted in the fire, explained to the fire marshal what occurred and how he responded. And Cummings testified about the work performed, precautions he and Johnson took to prevent the work from starting a fire, and his attempts to remove Dahl's

---

[1] The district court found Shamrock liable in conversion for selling Dahl's destroyed vehicles for scrap and keeping the proceeds. But because there was no evidence of the value of the scrap, the district court dismissed this claim for failure to prove damages. In a footnote, Dahl notes that the district court "gave no reason for not at least awarding [Dahl] the $1,800 [Shamrock] received from the sale of the scrap metal." But the district court also noted the lack of evidence of the cost of marketing the scrap and lack of evidence of the rental value of the space used to store the vehicle, which could have been offsets. Because Dahl has not formally raised this issue on appeal, we decline to address it further. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not briefed on appeal are waived).

vehicles after the fire started. The district court made specific findings about the "reasonable and prudent" actions of Johnson and Shamrock "in carrying out any duties owed to Dahl." That this record might support findings other than those made by the district court does not show that the district court's findings are clearly erroneous. *See Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000). Because the record supports the district court's findings that Cummings and Shamrock rebutted Dahl's claim of negligence, the district court did not err by concluding that Dahl failed to prove his negligence claim.

**Affirmed.**